FRED J. PRUSHA et al., Appellants, v. JOSEPH PRUSHA et al., Appellees.

**DEEDS:** Validity—Mental Incapacity—Fraud—Evidence. Evidence reviewed, in an action to set aside a deed on the ground of fraud and mental incapacity, and held insufficient to set the same aside.

*Appeal from Poweshiek District Court.*—K. E. WILLCOCKSON, Judge.

OCTOBER 25, 1919.

SUIT in equity to set aside a deed of real estate, and to establish the title of the plaintiffs to an undivided share of such real estate. The trial court dismissed the petition, and the plaintiffs appeal.—*Affirmed.*

*Jas. H. Willett,* for appellants.

*Talbott & Talbott,* for appellees.

EVANS, J.—The deed in question was made by John and Anna Prusha, on December 16, 1912. It conveyed to their son Joseph 40 acres of real estate in Poweshiek County. The general contention of the plaintiffs is that the grantors, husband and wife, were mentally incompetent to make the conveyance, and that the same was obtained by the grantee by fraud.

John and Anna Prusha, the grantors, were the parents of eight children, six sons and two daughters. These were: Louis, Joseph, Fred, Charles, John, Frank, Frances, and Mary. The latter two are known in this record as Frances

Polka and Mary Skarda. Previous to the time of the conveyance, the sons John and Frank had both died. The grantor, John Sr., was formerly the owner of 280 acres of land, all of which, except this 40-acre tract, had been distributed by him to his sons, many years before. The son Fred had receive 160 acres thereof, and the son Charles 80 acres thereof. These conveyances were made to these two sons under contracts providing for annuities for the life of the grantors. The son Louis received $1,200 in cash, with which he purchased 80 acres of land. The parents retained the 40-acre tract, and continued to live thereon down to the time of the conveyance in question, and for some months thereafter. It fairly appears that it was their expressed intention that the son Joseph and the two daughters should ultimately have the 40-acre tract, and this fact was known to the other members of the family. · At the time of the conveyance, the grantor was 88 years of age and his wife was 83. They had not farmed the tract in question for several years. They were both feeble, and not able to properly care for themselves, without the frequent help of some of their children. A plan was entered into, which had the apparent approval of all their surviving children, whereby the old people should make their home with their daughter Mrs. Polka. For that purpose, a little house was built for them, close beside the home of Mrs. Polka, and an arrangement was entered into whereby Mrs. Polka was to care for them, and to receive as her compensation $325 per year out of the income of the old people. It was pursuant to this plan that the conveyance under attack was made. In the deed from the parents, the son Joseph was the sole grantee. It was the understanding in the family, however, that he was to convey a half interest to his sisters, which he did do, a day or two later. The deed was executed at the home of the parents. Joseph was not present. The sons Louis and Charles were indirectly connected with its preparation.

Charles sent for the notary, and Louis was a witness to the signatures of his parents, each of which was in the form of a cross. The parents removed from the place in June following, and made their home, up to their death, four or five years later, with their daughter. The plaintiffs are the children of the deceased son, John Prusha Jr. Louis, son of the grantor, was also one of the original plaintiffs. Before the trial, he withdrew as plaintiff, but was called as a witness by the plaintiffs. His testimony was hostile to the deed.

The one question of fact in the case is, Was either of the grantors mentally incompetent to make the conveyance? Apart from this question, there was no evidence of any fraud in obtaining the conveyance. While it appears that the grantors were old and feeble, and that their faculties were naturally impaired by their great age, a careful reading of the entire record satisfies us that both of them were mentally competent to make the conveyance, and that they made the same pursuant to a long-standing purpose. The disinterested witnesses in the case were practically unanimous in sustaining the mental competency of the grantors. We are not able to accord great weight to the testimony of the son Louis. His testimony in court is severely contradicted by his conduct at the time of the conveyance. Having aided in the making of the conveyance, and having vouched for the signatures of his parents by his own signature as a witness, it is incredible that he could then have believed them to be wholly incompetent to make the conveyance.

We reach the conclusion that the trial court properly dismissed the petition, and its judgment is accordingly—
*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.